**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DEVIKA THOMSON, | No. CV 08-0919-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Pending before this Court is Plaintiff Devika Thomson's Motion for Summary Judgment (Doc. # 18) and Defendant Commissioner's Cross Motion for Summary Judgment (Doc. # 20). After considering the parties' arguments and the evidence in the record, the Court denies Thomson's Motion for Summary Judgment and grants Defendant Commissioner's Cross-Motion for Summary Judgment.

**BACKGROUND**

In November 2003, Thomson filed an application for disability insurance benefits under Title II of the Social Security Act. (Record Transcript ("Tr.") 54-56.) The Commissioner initially denied Thomson's application in April 2004. (Tr. 32-35) In September 2004, upon reconsideration, the Commissioner again denied Thomson's application. (Tr. 44-47.) On March 20, 2006, Thomson appeared before an administrative law judge ("ALJ"). At the hearing, Thomson and a vocational expert testified. (Tr. 592.)

In a decision dated May 22, 2006, the ALJ issued an unfavorable decision and denied Thomson's application. (Tr. 23.) Thomson filed a request for review, which the Appeals Council denied on March 26, 2008. (Tr. 9). On May 14, 2008, Plaintiff filed the present appeal to this Court.

Thomson was fifty-three years of age on December 1, 2001, the alleged onset date of her disability. Thomson alleges disability based upon depression, stress, generalized anxiety, fibromyalgia, body pain, sleep disorder, irritable bowel syndrome, impaired memory, light sensitivity, and retina pigmentosa. (Tr. 82, 108.) Thomson has a twelfth grade education, and she holds licenses in real estate and massage therapy. (Tr. 116, 598.) Thomson's other past relevant work includes eye glass cleaning and sales, as well as photography sales. (Tr. 599-600.)

In April 2003, Allen Thach, M.D., diagnosed Thomson with retinitis pigmentosa. (Tr. 133) Dr. Thach recommended the use of Vitamin A, as well as yearly checkups and the possibility of low-vision aids.

In May 2003, David Gannon, M.D., treated Thomson for fatigue, panic, multiple aches and pains, off and on constipation alternating with diarrhea, and trouble sleeping and concentrating. (Tr. 232.) Dr. Gannon diagnosed Thomson with probable fibromyalgia, irritable bowel syndrome, and an underlying anxiety disorder. However, Dr. Gannon noted that he needed to "rule out any other underlying organic problems." (Tr. 232.)

Between June and September 2003, Thomson consulted with chiropractor David Shiflet, D.C. (Tr. 174-83.) Thomson received manipulative and cold laser therapy, but showed little improvement from this treatment plan.

In July 2003, Thomson underwent a colonoscopy, the results of which showed a redundant colon with no polyps or cancers. (Tr. 140.)

In July 2003, Gary Silverman, D.O., examined Thomson at Dr. Gannon's request to rule out fibromyalgia. (Tr. 144-47.) Thomson complained of pain varying in intensity and duration throughout her body. Dr. Silverman opined that Thomson was suffering from generalized anxiety disorder, rather than fibromyalgia. (Tr. 146.) Dr. Silverman noted that

1  Thomson "made emphasis multiple times that after reading a fibromyalgia brochure she has
2  all the typical trigger points but on objective exam today she is slightly tender in the
3  trochanterica area but otherwise no trigger points were found." (*Id*.)   Dr. Silverman also
4  noted that "[a]fter the exam was over [Thomson] spent some time discussing with the office
5  manager the issues of wanting to show me the tender points and where they were despite me
6  not finding them on exam today." (*Id*.)  Dr. Silverman concluded that Thomson "certainly
7  could have a component of fibromyalgia but at this point it looks more like a somatic overlay
8  for her body complaints." (*Id.*)

9  In August 2003, Thomson informed Dr. Gannon that she did not like Dr. Silverman
10 and that she set up a new appointment with a rheumatologist. (Tr. 229.)  Dr. Gannon noted
11 that Thomson still had the trigger points of fibromyalgia with "a lot of psych overlay." (*Id.*)
12 Dr. Gannon concluded that Thomson's symptoms "[c]ould be fibromyalgia or a combination
13 of an anxiety disorder adding to it." (*Id.*)  Dr. Gannon prescribed an anti-anxiety medication
14 for Thomson.

15 In September 2003, Ralph Bennett, M.D., examined Thomson and diagnosed her with
16 fibromyalgia with eighteen out of eighteen positive tender points, poor sleep, irritable bowel
17 syndrome, and anxiety. (Tr. 176.)

18 After Dr. Bennett's examination, Thomson again visited Dr. Gannon. (Tr. 228.) After
19 reviewing Dr. Bennett's conclusions, Dr Gannon confirmed his diagnosis of fibromyalgia
20 syndrome with a high level of anxiety disorder.

## ANALYSIS

### *Standard of Review*

23 The Court will not set aside the Commissioner's decision unless: (1) the findings of
24 fact are not supported by substantial evidence in the record, or (2) the decision is based on
25 a legal error. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "Substantial
26 evidence means more than a mere scintilla but less than a preponderance; it is such relevant
27 evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*
28 *v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is relevant evidence

1 which, considering the record as a whole, a reasonable person might accept as adequate to
2 support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th
3 Cir. 1995). In determining whether substantial evidence supports the Commissioner's
4 decision, the court must consider the record as a whole and review evidence both supporting
5 and detracting from the decision. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The
6 ALJ's role is to make credibility determinations and to resolve conflicts in medical
7 testimony. *Andrews*, 53 F.3d at 1039. If the evidence is susceptible to more than one
8 rational interpretation, one of which supports the ALJ's decision, then the court will uphold
9 the decision. *Id.* at 1040. However, if the ALJ applied improper legal standards, the court
10 must set aside a decision even if it is supported by substantial evidence. *See Ceguerra v.*
11 *Sec'y of Health & Human Servs.*, 993 F.2d 735, 739 (9th Cir. 1991).

12 The claimant bears the initial burden to prove that she qualifies for disability benefits
13 under the Social Security Act. *Andrews*, 53 F.3d at 1040. A claimant is disabled if she is
14 "unable to engage in any substantial gainful activity by reason of any medically determinable
15 physical or mental impairment which . . . has lasted or can be expected to last for a
16 continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

### *The Sequential Process*

18 To qualify for disability benefits under the Social Security Act, a claimant must show,
19 among other things, that she is "under a disability." 42 U.S.C. 423(a)(1)(E). The Act defines
20 "disability" as the "inability to engage in any substantial gainful activity by reason of any
21 medically determinable physical or mental impairment which can be expected to result in
22 death or which has lasted or can be expected to last for a continuous period of not less than
23 12 months." *Id.* § 423(d)(1)(A). A person is under a disability "only if his physical or
24 mental impairment or impairments are of such severity that he is not only unable to do his
25 previous work but cannot, considering his age, education, and work experience, engage in
26 any other kind of substantial gainful work which exists in the national economy. *Id.* §
27 423(d)(2)(A).

28

1   The Social Security regulations set forth a five-step sequential process for evaluating
2   disability claims. 20 C.F.R. § 404.1520. *See also Reddick v. Chater,* 157 F.3d 715, 721 (9th
3   Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the
4   inquiry. 20 C.F.R. § 404.1520 (a)(4). The claimant bears the burden of proof at the first four
5   steps, but the burden shifts to the Commissioner at the final step. *Reddick,* 157 F.3d at 721.
6   The five steps are as follows:

7   First, the ALJ determines whether the claimant is "doing substantial gainful activity."
8   20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

9   Second, if the claimant is not gainfully employed, the ALJ next determines whether
10  the claimant has a "severe medically determinable physical or mental impairment." *Id.* §
11  404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[ ] [the
12  claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c).
13  Further, the impairment must either be expected "to result in death" or "to last for a
14  continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in *id.* §
15  404.1520(a)(4)(ii)). If the claimant does not have a severe impairment, the claimant is not
16  disabled.

17  Having found a severe impairment, the ALJ next determines whether the impairment
18  "meets or equals" one of the impairments listed in the regulations. *Id.* § 404.1520(a)(4)(iii).
19  If so, the claimant is found disabled without further inquiry. If not, before proceeding to the
20  fourth step, the ALJ will make a finding regarding the claimant's "residual functional
21  capacity based on all the relevant medical and other evidence in [the] record." *Id.* §
22  404.1520(e). A claimant's "residual functional capacity" is the most she can do despite all
23  her impairments, including those that are not severe, and any related symptoms. *Id.* §
24  404.1545(a)(1).

25  Fourth, the ALJ determines, despite the impairments, whether the claimant can still
26  perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ
27  compares its "residual functional capacity assessment . . . with the physical and mental
28  demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still

- 5 -

1 perform the kind of work she previously engaged in, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and her "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, she is not disabled. If the claimant cannot perform other work, she will be found disabled. The Commissioner has the burden of proving the claimant can perform other work. *Reddick,* 157 F.3d at 721. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)). "If the Commissioner meets his burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955.

*The ALJ's Decision*

In this case, the ALJ found that Thomson met the insured status requirements of the Social Security Act through September 30, 2003, and that Thomson was not engaged in any substantial gainful activity. (Tr. 25.) The ALJ also found that from December 1, 2002–the alleged onset date–through September 30, 2003–the date Thomson was last insured–that Thomson "had the following impairments which are considered to be severe when they are considered in combination: chronic depression, fibromyalgia, irritable bowel syndrome, and a generalized anxiety disorder." (*Id.*) However, the ALJ determined that these impairments did not meet or medically equal one of the impairments listed in the regulations. The ALJ then assessed Thomson's residual functional capacity as the ability "to perform light unskilled simple work with restrictions on crawling, crouching, climbing, squatting, and kneeling, and which did not involve interaction with the public." (*Id.*) The ALJ then found that Thomson was unable to perform her past relevant work as real estate agent, massage therapist, or salesperson because such work exceeded Thomson's residual functional capacity. After consider Thomson's age, education, work experience, and residual functional

- 6 -

1  capacity, the ALJ determined that there were a significant number of jobs that existed in the
2  national economy that Thomson could have performed as of September 30, 2003. Thus, the
3  ALJ concluded at step five in the sequential process that Thomson was not disabled.

*Other Source Evidence*

5  Thomson first argues that the ALJ erred by not properly assessing or rejecting Dr.
6  Shiflet's opinion and evidence. In reference to Dr. Shiflet, the ALJ stated as follows: "As
7  a chiropractor, Dr. Shiflet is not an acceptable medical source. Consequently his opinion and
8  treatment records are entitled to the same evidentiary weight as lay opinion testimony." (Tr.
9  27.) Thomson does not argue that Dr. Shiflet is an acceptable medical source. Rather,
10 Thomson focuses her argument by asserting that the ALJ erred by "completely
11 disregard[ing]" Dr. Shiflet's opinion and evidence. (Doc. # 21 at p. 2.) The Court disagrees.

12 To say that Dr. Shiflet's opinion is entitled to the same evidentiary weight as that of
13 a lay person is not to say that the ALJ altogether disregarded Dr. Shiflet's opinion. Indeed,
14 the ALJ's very next statement confirms this: "After careful consideration of the *entire* record,
15 the undersigned finds that the claimant had the residual functional capacity to perform light
16 unskilled simple work . . . through September 20, 2003." (Emphasis added.) Even though
17 the ALJ did not agree with Dr. Shiflet's opinion regarding Thomson's alleged disability,
18 there is no evidence in the record before this Court suggesting that the ALJ dismissed Dr.
19 Shiflet's opinion and evidence without any consideration whatsoever. In any event, the ALJ
20 did not have a duty to specifically accept or refute Dr. Shiflet's evidence. *Bunnell v.
21 Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990) ("Although a claimant is free to offer
22 chiropractic evidence to help the Secretary understand his inability to work . . . there is no
23 requirement that the Secretary accept or specifically refute such evidence.") (internal citation
24 omitted), *modified on other grounds by* 947 F.2d 341.

25 In a similar vein, Thomson argues that the ALJ erred by not considering the evidence
26 of David Springer, M.C., L.P.C., who treated Thomson eighty-one times for depression and
27 anxiety between April 2004 and February 2006. (Doc. # 18 at p. 6.) Defendant
28 Commissioner does not dispute that Thomson had depression and anxiety and, in fact, two

- 7 -

1  of Thomson's specific impairments the ALJ listed as severe were chronic depression and
2  generalized anxiety disorder. (Tr. 25.) Thus, there is nothing in the record before this Court
3  to suggest that the ALJ failed to consider the evidence of David Springer. Moreover,
4  Thomson must demonstrate that she became disabled on or before September 30, 2003, the
5  date her insured status expired. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).
6  David Springer did not begin counseling Thomson until more than seven months after
7  Thomson's insured status expired. As such, David Springer's counseling records are not
8  material to the ALJ's conclusion that Thomson's was not disabled between the pertinent time
9  period of December 1, 2002, and September 30, 2003.

*Alleged Onset Date*

11  Thomson argues that, because she stopped working in 2001, the onset date of her
12 alleged disability was prior to December 1, 2002, and that the ALJ erred by failing to procure
13 the assistance of a medical advisor concerning the onset date of Thomson's alleged disability.
14 Thomson's arguments, however, presuppose the existence of a disability within the meaning
15 of the Social Security Act. The ALJ specifically determined that Thomson was not disabled.

16  Furthermore, a medical advisor concerning the onset date was not necessary because
17 the onset date of Thomson's alleged disability was not a contested issue before the ALJ. In
18 response to the ALJ's questioning, Thomson admitted through counsel that the alleged onset
19 date was December 1, 2002:

> ALJ: In this case the alleged onset date of disability is December 1, 2002. And at that time the Claimant was age 53. And since this is a Title II claim for Disability Insurance Benefits, that's the important date for us. . . . Now she's alleging December of '02 and if that's correct, then there's no problem.
>
> Atty: And I've explained that issue to the Claimant, Judge.
>
> ALJ: All right.
>
> Atty: And she knows what that means.

26 (Tr. 594.) Given Thomson's admission, her failure to raise this issue before the ALJ, and the
27 fact that she had ample opportunity after the filing of her disability application to amend her

- 8 -

1 onset date to an earlier date, the Court finds that the ALJ did not err by fixing the onset date
2 of December 1, 2002.

### *Thomson's Credibility*

4 Thomson next argues that the ALJ erred in evaluating Thomson's credibility. It is the ALJ's responsibility to determine credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, "[o]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaint's based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)). If the ALJ finds that a plaintiff lacks credibility, the ALJ must specifically state the reasons for rejecting plaintiff's testimony. *Moisa*, 367 F.3d at 885. "Unless there is affirmative evidence showing that the claimant is malingering, the [ALJ's] reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Reddick*, 157 F.3d at 724 (quoting *Lester v. Charter*, 81 F.3d 821, 834 (9th Cir. 1995)). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" *Thomas*, 278 F.3d at 958-59 (quoting *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir.1997)).

21 The ALJ stated that "[a]fter considering the testimony and evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the symptoms alleged, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not fully credible." (Tr. 26.) The ALJ then went on to discuss the evidence of the various doctors and counselors that is inconsistent with Thomson's testimony concerning the intensity, duration, and limiting effects of her symptoms.

1   The ALJ discussed the reports of Dr. Thatch, who diagnosed Thomson with retinitis pigmentosa. However, as the ALJ noted, Dr. Thatch "recommended no limitations on her ability to work and concluded that no further treatment was necessary." (Tr. 26.) The ALJ then discussed Dr. Silverman's reports. Dr. Silverman diagnosed Thomson with a generalized anxiety order, and Dr. Silverman specifically noted in his report that Thomson "certainly could have a component of fibromyalgia but at this point it looks more like a somatic overlay for her body complaints." (Tr.146.) The ALJ also discussed the opinions of Drs. Bennett and Gannon. In referencing Dr. Gannon's report, the ALJ noted that Thomson's symptoms could be caused by an underlying anxiety disorder. In addition, the ALJ gave weight to Paul Tangeman, Ph.D., a state agency licensed psychologist who reviewed Thomson's medical records from the period of December 2002, through September 2003. Dr. Tangeman concluded that Thomson had "moderate" restrictions on her ability to maintain concentration, persistence, or pace, "mild" difficulties in her activities of daily living, and "mild" difficulties in maintaining social functioning. (Tr. 263.)

The Court concludes that the ALJ's analysis adequately identifies what portions of Thomson's testimony is not credible and what evidence undermines Thomson's complaints. Given that none of the examining physicians imposed any limitations on Thomson during the insured period, and the inconsistencies between Thomson's testimony and the various reports in the record before this Court, the Court cannot say that the ALJ erred by finding Thomson's statements concerning the intensity and limiting effects of her symptoms not fully credible.

*The ALJ's Hypothetical*

Thomson finally argues that the ALJ erred by posing a deficient hypothetical to the vocational expert. "An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. The hypothetical should be 'accurate, detailed, and supported by the medical record.'" Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2009) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).

1  The ALJ posed the following hypothetical:

2  Well, let's assume that we have somebody who was age 54 as of September of '03, which was the date last insured. So that person would therefore be classified as approaching advanced age, who has a high school education and above, who is able to do light exertional level work, wouldn't have to lift any more than 20 pounds occasionally and up to 10 pounds on a more frequent basis. And the job would be unskilled, that it would involve simple operations, that there'd be certain postural restrictions and that there'd be no crawling or climbing or squatting or kneeling and that given those restrictions, are there jobs that exist in the local and national economies that such a person could do? (Tr. 613.)

8  In response, the vocational expert testified that there were 9,000 such positions in the greater

9  metropolitan Phoenix area, and approximately 520,000 such positions nationwide. (Tr. 614.)

10  Thomson asserts that the hypothetical is deficient because it does not take into

11  consideration Thomson's pain, fatigue, light sensitivity, and, in particular, her driving

12  limitations. Initially, it is not clear how pain and fatigue are not subsumed by the ALJ's

13  hypothetical. Additionally, it is proper for an ALJ to limit a hypothetical to those limitations

14  that are supported by substantial evidence. *Osenbrock*, 240 F.3d at 1165. Here, Dr. Thach,

15  a specialist in retinal surgery, examined Thomson and placed no restrictions on her driving,

16  nor did Dr. Thach place any limitations on Thomson's activities as a result of her light

17  sensitivity. Finally, the hypothetical contained all of the limitations the ALJ found credible

18  and supported by substantial evidence in the record. Therefore, the ALJ's reliance on the

19  vocational expert's testimony in response to the hypothetical was proper.

20  Thomson also urges that the hypothetical is deficient because the ALJ used an

21  ambiguous term in the hypothetical. Thomson suggests that the term "simple" is ambiguous

22  because it is not clear whether "'simple' is related to 'activities' rather than 'mental

23  processes.'" (Doc. # 18 at p. 15.) Thomson provides no support for why the term "simple"

24  is ambiguous when used in this context, nor why the vocational expert would be unfamiliar

25  with this term in the context of available unskilled jobs. *See Bayliss v. Barnhart*, 427 F.3d

26  1211, 1218 (9th Cir. 2005). Additionally, despite the alleged ambiguity, the ALJ juxtaposed

27  the vocational expert's testimony against the Dictionary of Occupational Titles ("DOC"), and

28  found the vocational expert's testimony was consistent with the DOC. (Tr. 28.) For these

- 11 -

reasons, the Court finds that the term "simple" is not ambiguous and that the ALJ did not err in using this term.

## CONCLUSION

The Court finds that the ALJ did not commit an error of law by denying Plaintiff's claim for benefits. The Court further finds that there is substantial evidence in the record before this Court supporting the ALJ's decision.

Accordingly,

**IT IS ORDERED** that Plaintiff Devika Thomson's Motion for Summary Judgment (Doc. # 18) is denied.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (Doc. # 20) is granted.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 11th day of May, 2009.

James A. Teilborg
United States District Judge